IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | Civil Case No. 91-1501 |
| v. | : | |
| | : | (Judge McClure) |
| CHROMATEX, INC., THE | : | |
| VALMONT GROUP, ALAN | : | |
| CHERENSON, STANLEY SIEGEL, | : | |
| ALAN SHULMAN, JAMES | : | |
| COCHRAN and JOSEPH BYRNES, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM**

July 6, 2010

## I.  INTRODUCTION

Before the court are two motions for protective orders (Rec. Doc. Nos. 102 and 104), both of which were filed on May 11, 2010 by the United States of America, the plaintiff, on behalf of the United States Environmental Protection Agency ("EPA").  The United States has filed these motions so that it might produce to the defendants allegedly confidential information that relates to cost documentation supporting its future response cost bills incurred in connection with the Valmont Industrial Park, Hazle Township, Pennsylvania ("The Site").   The two instant motions arise out of an action begun in 1991 against defendants Alan

1

Cherenson, Stanley Siegel, and Alan Shulman ("The Valmont Partners").[1]  This

action resulted in declaratory relief awarded to the United States in two orders

issued on October 27, 1993 and February 9, 1994 (the "1993 Order" and "1994

Order," respectively).  For the following reasons, we will grant the United States'

motion for a protective order regarding confidential business information.  In

addition, we will order the government to provide to the court, *in camera*, the

document at issue in its motion for a protective order pursuant to the Privacy Act

of 1974, 5 U.S.C. § 552a.  (Rec. Doc. Nos. 104 and 105).[2]

## II.  BACKGROUND

On October 30, 1991, the United States commenced this action by filing a

complaint under § 107 of the Comprehensive Environmental Response,

Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9607.  The complaint

sought recovery of the costs incurred by the EPA responding to a release and

threatened release of hazardous substances from a manufacturing facility located at

---

[1] The defendants currently include, in addition to Alan Shulman and Stanley Siegel, Ruth Cherenson as personal representative of the estate of Alan Cherenson and Adrienne and M.F. Rolla, as executors of the estate of Joseph Byrnes.  (Rec. Doc. Nos. 106 and 107, n.1).

[2] The parties are reminded that Middle District Local Rule 5.1(c) requires the use of font that is at least 14 point, double-spaced, in the text of documents such as briefs.  Footnote text is to be the same size as the text found in the body of the document.

the Site. The complaint also sought a declaratory judgment on the defendants'

liability for future response costs pursuant to § 113(g)(2) of CERCLA, 42 U.S.C. §

9613(g)(2), and pursuant to 28 U.S.C. § 2201.

On October 27, 1993, this court issued an order granting the United States,

inter alia, declaratory relief providing that the defendants would be liable for future

response costs or damages incurred at the Site. (Rec. Doc. No. 43). On February

9, 1994, we issued a final judgment pursuant to Rule 54(b) of the Federal Rules of

Civil Procedure, finding all defendants liable for $682,002.16. (Rec. Doc. No. 50).

In addition, we established a procedure for the payment of the future response costs

referred to in the 1993 Order. This procedure set forth the following method for

handling payment disputes:

> Defendants may dispute payment of Additional Costs and Future
> Response Costs *if defendants determine that the United States has
> made an accounting error or if they allege that a cost item that is
> included represents costs that are inconsistent with the National
> Contingency Plan (NCP)*, 40 C.F.R. Part 300. Any such dispute shall
> specifically identify the contested costs and the basis for defendants'
> objection to the costs and shall be sent to plaintiff at the addresses
> specified above. The parties shall negotiate in good faith to resolve
> disputed claims. If the parties fail to resolve a dispute within thirty
> (30) days of defendants' written notification to plaintiff of the dispute,
> plaintiff may request by motion and supporting documentation that
> this Court order defendants to pay the disputed costs.

Id. (emphasis added). On September 29, 1994, the United States Court of Appeals

for the Third Circuit affirmed our decision.

Beginning in 2005, the United States sent bills to the Valmont Partners requesting payment for future response costs incurred at the Site. On May 3, 2006, the former Valmont Partners filed a motion for further relief pursuant to 28 U.S.C. § 2202. (Rec. Doc. No. 65). Despite the explicit procedure already set out in the 1994 Order, the Valmont Partners moved this court to establish "a procedure by which their liability and that of other potentially liable parties for new and additional response costs . . . may be determined." (Rec. Doc. No. 66 at 1-2). Specifically, the Valmont Partners requested that the court: (a) order the EPA to file with the court its administrative record for its new and additional response actions taken by the EPA after November 15, 1988; (b) issue a case management order setting a schedule for discovery, pleadings, and dispositive motions; (c) grant leave to the Valmont Partners to file a cross-claim for contribution and indemnification against defendant Chromatex, Inc.; and (d) grant leave to the former Valmont Partners to file a third-party claim for contribution and indemnification against Rossville Industries, Inc., Culp, Inc., Chromatex Properties, Inc., and any other successor of Chromatex, Inc. or subsequent owner of the Site. Id. at 14-15. On June 22, 2006, plaintiff United States filed a brief in opposition and defendants, the former Valmont Partners, filed a reply brief on July

7, 2006.

This court, by a Memorandum and Order dated October 17, 2006, denied the Valmont Partners' motion. First, we found that the Valmont Partners did not have statutory authority to move for further relief pursuant to 28 U.S.C. § 2202, as the Valmont Partners were the unsuccessful party in the declaratory action. Therefore, the Valmont Patners could not move for "further relief." Second, even if the Valmont Partners did in fact have such authority, we concluded that we had the discretion, under § 2202, to decide the motion for further relief. Exercising such discretion, we concluded that the relief requested by the Valmont Partners was unnecessary in light of the 1994 Order, which provided an adequate procedure for the handling of payment disputes concerning future response costs. Finally, we found that that procedure, which provides the United States with the discretion to pursue such costs by motion, had the effect of making the Valmont Partners' challenge to costs not yet pursued by the United States premature, as well as inconsistent with the procedure provided for in the 1994 Order.

## III. PROCEDURAL HISTORY

### A. The Instant Motion for Protective Order Regarding Confidential Business Information

On May 11, 2010, the United States filed a motion for a protective order

concerning confidential business information ("CBI"), as well as a brief in support. (Rec. Doc. Nos. 104 and 105). The proposed protective order is sought "to protect the confidentiality of information, which may be entitled to treatment as 'Confidential Business Information' under 40 C.F.R. Part 2, that the [EPA] seeks to produce to Defendants in accordance with [the 1994 Order]." (Rec. Doc. No. 104 at 1-2). According to the government, at issue is information provided by EPA contractors which, the government argues, "can be of potential value to other businesses competing for contracts with EPA, other agencies, or the private sector." (Rec. Doc. No. 105 at 8). The government contends that the EPA typically has afforded confidential treatment to information relating to costs like profit rates, labor, and overhead, as release of this type of information "is likely to cause substantial competitive harm." Id. at 8-9 (citing Environmental Protection Agency, 58 Fed. Reg. 458, 459 (1993)). The government posits that the "EPA routinely enters into a confidentiality agreement or seeks the entry of a stipulation and protective order before releasing CBI." Id. at 9 (citing 58 Fed. Reg. 458, 460 ("This regulation amends 40 CFR 2.310 to provide for limited release of CBI to responsible parties . . . under a stipulation and protective order during litigation."); 40 C.F.R. § 2.310). EPA regulations, the government notes, provide that disclosure of "any information to which this section applies that may be entitled to

confidential treatment . . . must be made pursuant to a stipulation and protective order . . . ." 40 C.F.R. § 2.310(g)(6).[3] Therefore, so the government argues, it is not seeking to add any conditions to its obligations under this court's 1994 Order. The government contends that good cause exists for the issuance of a protective order protecting the CBI at issue.[4]

---

[3] As the United States indicates, 40 C.F.R. § 2.209(d) states that the "EPA may disclose any business information in any manner and to the extent ordered by a Federal court." Therefore, the government argues that if it was the court's intention for its 1994 order to preempt EPA regulations such as § 2.310, the government "requests that the Court unambiguously order EPA to produce the supporting cost documentation for the Future Response Cost Bills in spite of those regulations." Id. at 13, n.11.

[4] In addition to arguing that substantial harm to its contractors' competitive positions could result if such information were to be released, the government also notes that, in August of 2005, the controlling officer of Chromatex, as well as the counsel for the Valmont Group, signed confidentiality agreements covering potential CBI relating to supporting cost documentation concerning the Site. Id., Exhibits 1 and 2. Pursuant to these agreements, the defendants agreed that "the cost documents to be produced by EPA will include documents which have been submitted to EPA by various contractors . . . containing certain information which may be entitled to confidential treatment under 40 CFR Part 2." Id. at Exhibits 1 and 2 at 1. Since that time, the list of contractors has grown such that the entire list is not covered, and Mr. Satterfield and counsel to the Valmont Group have not signed documentation allowing for the incorporation of the expanded lists into the existing confidentiality agreement. Id. at 5-7. In light of this fact, the government argues that it cannot provide such information to the defendants and that, even though the Valmont Partners do not have all of the supporting cost documentation, as the EPA is unable to provide such information to the defendants absent a protective order, "the Valmont Partners claim that *all* of EPA's costs incurred at the Site are inconsistent with the National Contingency Plan . . . ." Id. at 7-8 (emphasis included).

Defendants filed a brief in opposition on May 25, 2010. (Rec. Doc. No. 107). First, defendants contend that the government, by attempting to seek a protective order concerning CBI, is seeking to impose conditions upon this court's 1994 Order. (Rec. Doc. No. 107 at 5-6). Defendants also contend that Fed. R. Civ. P. 26(c)(1)(G) cannot properly form the basis for any protective order issued by this court, as this rule pertains to pre-trial discovery. Second, the Valmont Partners claim that the United States must initiate an action to obtain the relief sought, namely a CBI protective order relating to costs incurred at the Site. Id. at 6-8. Third, the defendants argue that the United States has failed to establish "good cause" for the issuance of a protective order, as the government has failed to "specifically demonstrate" that disclosure of the relevant documents pursuant to the 1994 Order will cause a "clearly defined and serious injury." Id. at 8-10. Even if the United States did demonstrate such injury, defendants contend that a protective order is still inappropriate based on the factor-balancing test, established by the Court of Appeals for the Third Circuit, which is to be applied by a court in considering whether to issue a protective order. Id. at 11-12.

In its reply brief (Rec. Doc. No. 109), the government again notes that the defendants neither dispute the facts in support of its CBI protective order motion nor allege that prejudice would be incurred as a result of having received the

information at issue.  The government also rebuts each of the three arguments

presented by the defendants in their brief in opposition.  First, the United States

contends that the court has the clear authority to enter such a protective order,

whether pursuant to Fed. R. Civ. P. 26(c)(1)(G) or based upon its inherent

equitable powers.  <u>Id.</u> at 109.  The government also argues that, rather than seeking

to impose additional conditions on this court's 1994 Order, the government is

instead seeking to both comply with the 1994 Order and abide by its own

regulations.  Second, the government reiterates its contention that this court

"retains jurisdiction over the procedures regarding billing and the provision of

related cost documentation, payment of bills, and disputes arising from the

response costs incurred by the United States at the Site[.]"  <u>Id.</u> at 6.  Third, the

government contends that issuance of a protective order by this court is

appropriate, as good cause for such issuance exists based upon a balancing of the

relevant factors.  <u>See id</u>. at 6-9.

### B.  The Instant Motion for Privacy Act Protective Order

Also on May 11, 2010, the United States filed a motion for a Privacy Act

protective order pursuant to 5 U.S.C. § 552a(b)(11), as well as a brief in support.

(Rec. Doc. No. 102 and 103).  The proposed protective order concerns information

allegedly protected from disclosure by the Privacy Act of 1974, 5 U.S.C. § 552a.

The United States claims the information that is the subject of the proposed protective order "may impact the Defendants' total Future Response Cost liability for the Site." (Rec. Doc. No. 103 at 4).

The Valmont Partners filed a brief in opposition on May 25, 2010, arguing that the motion for protective order should be denied. (Rec. Doc. No. 106). First, the Valmont Partners argue that the United States has failed to identify those documents that are the subject of the proposed protective order and similarly has failed to establish that the Privacy Act is applicable to any such documents. Id. at 4-6. Second, the Valmont Partners contend that the United States has failed to provide the defendants, pursuant to the 1994 Order, with cost documentation concerning costs incurred at the Site. In addition, the Valmont Partners claim that the United States, with its motion for a protective order, is seeking to impose additional conditions on the language of the 1994 Order relating to its compliance. Id. at 6-7. Third, the Valmont Parnters argue that the United States must begin a new action seeking the recovery of future costs incurred for the United States to impose such conditions on the 1994 Order. Id. at 8-10. Fourth, the defendants aver that the United States has not established "good cause" for the issuance of a protective order and that, even if it did demonstrate a "clearly defined and serious injury," a protective order is not warranted.

On June 3, 2010, the United States filed a reply brief in support of its motion for a protective order pursuant to the Privacy Act. (Rec. Doc. No. 108). At the outset, the government again contends that "[t]he Valmont Partners do not dispute the facts presented in support of the United States' motion, nor do they allege that they or any of the Defendants will be prejudiced in any way by receiving the information under the provisions of a protective order." Id. at 2. In this brief, the United States seeks to rebut each of the arguments presented by the Valmont Partners in their opposition brief. First, the United States claims that it seeks to disclose only one document that would otherwise be protected by the Privacy Act from disclosure. Id. at 3. The United States notes that it has requested a court order under 5 U.S.C. § 552a(b)(11) because it would otherwise be prohibited from releasing information protected under the Privacy Act.[5] Id. Second, the United States contends that the Valmont Partners' argument that the information sought to be disclosed is not a type of supporting cost documentation, and thus is beyond the purview of the 1994 Order, "is entirely irrelevant since the United States is not

_____

[5] Section 552a(b)(11) of Title 5 of the United States Codes states that "[n]o agency shall disclose any record which is contained in a system of records by any means of communication to any person, . . . unless disclosure would be -- . . . (11) pursuant to the order of a court of competent jurisdiction."

seeking a Privacy Act protective order to disclose 'cost documentation.'" Id. at 4.[6]

Third, the United States argues that this court "retains jurisdiction over the billing,

payment and disputes arising from the response costs incurred by the United States

at the Site by the plain language of its 1994 Order which remains in effect, in its

entirety." Id. at 5. Fourth, the government avers that issuance of a protective order

by this court is warranted, as good cause for such issuance exists. See id. at 5-6.

## IV. DISCUSSION

### A. The Instant Motion for Protective Order Regarding Confidential Business Information

First, the defendants imply that Rule 26(c)(1)(G) does not apply to the

instant motions, as discovery in the underlying action has long since passed. In

addition, the defendants argue that the United States is, in an untimely fashion,

attempting to modify this court's 1994 Order by seeking to impose additional

conditions to disclosure of the relevant documents, and that "EPA's regulations are

inapplicable here, because they pertain only to how EPA responds to requests

under the Freedom of Information Act." (Rec. Doc. No. 107 at 6).

We find the defendants' arguments unavailing. As noted above, "courts

have inherent equitable power to grant confidentiality orders, whether or not such

---

[6] The United States contends that the information, though it "relates to costs," does not constitute "supporting cost documentation." Id.

orders are specifically authorized by procedural rules." Pansy v. Borough of Stroudsburg, 23 F.3d 772, 785 (3d Cir. 1994). In addition, the government is not seeking to modify any pre-existing order, but instead is attempting to comply with this court's 1994 Order while also abiding by EPA regulations. We also find the contention that EPA regulations are inapplicable because they only pertain to EPA responses to Freedom of Information Act ("FOIA") requests, a contention made by defendants with no citation to any legal support, to be without merit. See 40 C.F.R. § 2.310(g)(6).

Second, the defendants suggest that the government's attempt to obtain a protective order is improper, as it seeks to re-open a closed case instead of instituting a new action for further costs, as allegedly required by this court's 1994 Order. As we noted in our order dated October 17, 2006, in which we denied the Valmont Partners' motions seeking further relief, the 1994 Order offers an adequate procedure for managing and resolving disputes over future response costs. (Rec. Doc. No. 99 at 4-5). This order does not require the United States to "begin an action for further costs claimed"; instead, the order sets up a procedure by which the EPA bills the defendants, with such bill including "the documentation supporting the costs, including invoices, treasury vouchers, and work performance documents." Id. The government appears simply to be attempting to comply with

this order and EPA regulations by both seeking to disclose the documentation at issue while also attempting to protect potential confidential business information. In light of the above, the court remains unconvinced that the instant motion is an improper attempt to re-open the judgment in this case.

Third, defendants claim that the United States has failed to demonstrate that the issuance of a protective order is warranted in this case. For the following reasons, we disagree.

Federal Rule of Civil Procedure 26(c), which governs protective orders during discovery,[7] establishes that a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." As the Third Circuit has indicated, "[g]ood cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure." Publicker Industries, Inc. v. Cohen, 733 F.2d 1059, 1071 (3d Cir. 1984) (citing Zenith Radio Corp. v. Matsushita Electric Industrial Co., 529 F. Supp. 866, 891 (E.D. Pa. 1981)). However, a good cause showing cannot be supported by "[b]road allegations of harm, unsubstantiated by

---

[7] While Rule 26(c) is found among those rules pertaining to discovery, the Third Circuit has noted that the Supreme Court, in Seattle Times Co. v. Rhinehart, 467 U.S. 20, 35 (1984), "made clear that courts have inherent equitable power to grant confidentiality orders, whether or not such orders are specifically authorized by procedural rules." Pansy, 23 F.3d at 785 (3d Cir. 1994).

specific examples or articulated reasoning.'" Pansy, 23 F.3d at 786 (quoting

Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1121 (3d Cir. 1986), cert. denied,

484 U.S. 976, 108 S. Ct. 487, 98 L. Ed. 2d 485 (1987)).

The parties agree that the factor-based test announced by the Third Circuit in

Pansy bears upon this court's determination concerning both of the instant

protective order motions.[8]  In Pansy, the Third Circuit found that the following are

factors, though they are neither mandatory nor exhaustive, to be considered by a

court in deciding whether a protective order should be issued:

1) whether disclosure will violate any privacy interests;

2) whether the information is being sought for a legitimate purpose or for an improper purpose;

3) whether disclosure of the information will cause a party embarrassment;

4) whether confidentiality is being sought over information important to public health and safety;

5) whether the sharing of information among litigants will promote fairness and efficiency;

6) whether a party benefitting from the order of confidentiality is a public entity or official; and

---

[8] In Pansy, the court emphasized that "simply because courts have the power to grant orders of confidentiality does not mean that such orders may be granted arbitrarily."  23 F.3d at 785.

7)     whether the case involves issues important to the public.

Glenmede Trust Co. v. Thompson, 56 F.3d 476, 483 (3d Cir. 1995) (citing Pansy, 23 F.3d at 787-91.

First, disclosure may very well violate the privacy interests of those contractors employed by the EPA.  Certainly, it appears as though outright disclosure, unless made pursuant to a court order, would violate the regulations of the EPA.  The information at issue could be of value to competing businesses seeking EPA contracts, and disclosure likely would result in significant harm to the contractors.  The second factor under Pansy is "whether the information is being sought for a legitimate purpose or for an improper purpose."  In the instant case, the party seeking to disclose the information at issue is also the party seeking the protective order.  Here, the United States is seeking to disclose the information for a legitimate purpose, namely, to comply with the procedure described in this court's 1994 Order.  Third, more than mere embarrassment is potentially at stake.  Instead, the government seeks to prevent from disclosure to the public information relating to costs like profit rates, labor, and overhead from contractors employed by the EPA for cleanup at the Site.  We believe that release of this type of information weighs more heavily in favor of an entry of a protective order than mere embarrassment.  See Glenmede Trust, 56 F.3d at 484 (noting that the

embarrassment factor typically has been viewed "in terms of non-pecuniary harm to individuals," but that "the primary measure of the well-being of a business is pecuniary"); see also Cipollone, 785 F.2d at 1121 (noting than "an applicant for a protective order whose chief concern is embarrassment must demonstrate that the embarrassment will be particularly serious"). Here, the government is concerned not with embarrassment that might befall the EPA's contractors, but instead the potential destruction of the competitive advantage maintained by the contractors. This type of destruction is of the pecuniary type that is "the primary measure of the well-being of a business": the type of specific and serious injury that supports the issuance of a protective order. See Glenmede Trust, 56 F.3d at 484. In light of the above, the first three Pansy factors weigh in favor of the issuance of a protective order.

Fourth, it is not clear whether the information at issue is important to public health and safety; while the costs incurred at the Site clearly were undertaken in association with a polluted area, the CBI in particular is only tangentially related to public health or safety, as such information pertains to costs like profit rates, labor, and overhead from the EPA's contractors. Therefore, this factor appears to be a neutral one.

Fifth, this court believes that the sharing of the CBI at issue will promote

fairness and efficiency among the United States and the defendants, and therefore this factor weighs in favor of issuing a protective order. By providing such information to the defendants, even pursuant to a protective order, the government will assist the defendants in determining whether an accounting error in calculating the related costs was made or whether the costs incurred were inconsistent with the NCP.[9] We fail to see how the government's attempt to affirmatively provide the defendants with this information could somehow be described as unfair or inefficient; quite to the contrary, the government's attempts to provide this information appear to be the most reasonable and efficient means for both documenting the costs incurred, as well as acting within the dictates of EPA regulations by protecting EPA contractors.

Sixth, the Valmont Partners argue that "it appears that the protection requested by the government is merely so that it - a public entity - need not conduct a review of its own documents." (Rec. Doc. No. 107 at 11). This contention appears disingenuous, as the protective order would concern "trade secrets or commercial or financial information submitted by a contractor to the United States or EPA and which may be entitled to confidential treatment under 40 C.F.R. Part

---

[9] These two issues represent the two ways in which the defendants may dispute the required payments for additional costs and future response costs. (See Rec. Doc. No. 50).

2." (Rec. Doc. No. 104, Protective Order Regarding Confidential Business Information, at 2-3). In addition, the protective order indicates that "[t]his information has not been determined by EPA under 40 C.F.R. Part 2, subpart B, not to contain information entitled to confidential treatment." Id. at 3. Regardless of the burden, it appears to this court that the government is seeking to comply with EPA regulations. In addition, the sixth factor specifically pertains to whether the party that benefits from the order is a public official or entity; here, the individuals who most directly benefit from the protective order are the EPA's contractors, who are neither public officials nor a public entity. Therefore, the court concludes that this factor weighs in favor of entry of a protective order.

Finally, pursuant to the seventh factor, this court looks to whether the matter involves issues that are of importance to the public. Here, clearly, the underlying matter involves issues of great importance to the public. The EPA, for well over a decade, has been attempting to remedy contamination at the Site. The public is well aware, especially in light of the recent oil spill in the Gulf of Mexico, of the great costs associated with contaminated land, waterways, and drinking water. Certainly, the defendants are right to point out that "millions of dollars of taxpayer money . . . spent by the government during a fifteen-year cleanup" are at issue. (Rec. Doc. No. 107 at 12). In addition, the defendants cite to Pansy, in which the

Third Circuit noted that "privacy interests are diminished when the party seeking protection is a public person subject to legitimate public scrutiny." 23 F.3d at 787. However, the court in <u>Pansy</u> also noted the following:

> [W]here it is likely that information is accessible under a relevant freedom of information law, a strong presumption exists against granting or maintaining an order of confidentiality whose scope would prevent disclosure of that information pursuant to the relevant freedom of information law. In the good cause balancing test, this strong presumption tilts the scales heavily against entering or maintaining an order of confidentiality. To avoid complicated inquiries as to whether certain information would in fact be available under a freedom of information law, courts may choose to grant conditional orders. For example, . . . a court could grant an order of confidentiality while specifying that the scope of the confidentiality order does not extend so as to prevent disclosure pursuant to any freedom of information law. Courts have discretion to fashion such orders according to the needs and circumstances of each case.

<u>Id.</u> at 791.

In light of the Third Circuit's guidance in <u>Pansy</u>, this court believes that a protective order is warranted in this case. After weighing the factors provided by the Third Circuit in <u>Pansy</u>, we believe that the government has established good cause for the issuance of a protective order, as disclosure of the CBI at issue would work both a clearly defined and a serious injury on the EPA's contractors. However, while we will grant the government's motion for a protective order regarding confidential business information (Rec. Doc. No. 104), we also believe

that any protective order issued should not impede the public's right to information, that the public is entitled to, concerning how and for what purposes taxpayer money was spent concerning cleanup efforts at the Site. Therefore, while we will grant the motion for a protective order, we do so with an important caveat; the scope of the protective order issued shall "not extend so as to prevent disclosure pursuant to any freedom of information law." <u>Pansy</u>, 23 F.3d at 791.

## B. The Instant Motion for Privacy Act Protective Order

With a number of notable exceptions, pursuant to the Privacy Act, "[n]o agency shall disclose *any record* which is contained in *a system of records* by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, *the individual* to whom the record pertains . . . ." 5 U.S.C. § 552a(b). An individual, for purposes of the Privacy Act, is defined as "a citizen of the United States or an alien lawfully admitted for permanent residence . . . ." 5 U.S.C. § 552a(a)(2). A record is "any item, collection, or grouping of information about an individual that is maintained by an agency," which includes "his [or her] education, financial transactions, medical history, and criminal or employment history," in addition to the person's name or "identifying number, symbol, or other identifying particular . . . ." 5 U.S.C. § 552a(a)(4). Last, a system of records is defined as "a group of any

records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular . . . ."  5 U.S.C. § 552a(a)(5).

First, defendants claim that the Privacy Act is inapplicable to the information sought to be disclosed and that the averment made by the government "is wholly insufficient to demonstrate that the information is protected from disclosure under the Privacy Act."  (Rec. Doc. No. 106 at 5).  The defendants also seek to characterize the protective order requested as being a "blanket protective order," id. at 6, n.3, and that the information sought to be protected - supporting costs information required to be disclosed by this court's 1994 Order - is not protected, as such information is information that is to be disclosed "pursuant to the order of a court of competent jurisdiction."  5 U.S.C. § 552a(b)(11).

The documentation sought to be disclosed by the government pursuant to the proposed protective order is in fact one document that contains, as represented to by the United States, "sensitive personnel information which is relevant to the Defendants' response cost liability, but which is protected from disclosure by the Privacy Act, 5 U.S.C. § 552a."  (Rec. Doc. No. 108 at 3).  We see no basis for the defendants' contention that the information sought to be disclosed is not a "record" contained in "a system of records" that pertains to "an individual."  See 5 U.S.C. §

552a(b).  Similarly, the protective order sought by the government is not a "blanket order"; instead, the order simply limits those who would have access to the document and the parameters attached to such access.  (See Rec. Doc. No. 102, Attachment No. 1).

Second, the defendants contend that, by its motion, the United States is seeking to impose additional conditions upon the government's compliance with this court's 1994 Order.  This argument is similar to that posited by the defendants in opposition to the government's motion concerning the CBI protective order, and it fails for those reasons set forth above.  Quite simply, the government does not seek to modify any pre-existing order.[10]

Third, defendants contend that, pursuant to this court's 1994 Order, the government must initiate a new action for cost recovery to obtain the relief sought.  Again, this argument is similar to that made by the defendants in their brief filed in opposition to the CBI protective order motion and, for those reasons set forth above, must similarly fail.

Based upon the relevant factors announced in Pansy, though, we believe that

---

[10] The government also notes that, while the personnel information that is the subject of the proposed protective order may relate to costs, such information is not supporting cost documentation and, therefore, does not fall within the purview of the 1994 Order.  (Rec. Doc. No. 108 at 4).

good cause has not been established, in this case, for the issuance of a protective order.  First, it does appear as though the proposed protective order would protect the privacy interests of a third party, not a public entity or official, a consideration that weighs in favor of the issuance of a protective order, based on the first and sixth factors in <u>Pansy</u>.  The government seeks to disclose the documentation at issue for a legitimate purpose, namely, to provide the defendants with documentation "that will result in their reduced response cost liability," a consideration that weighs in favor of the issuance of a protective order based on the second factor.  This purpose, as the government notes, will also assist in promoting fairness and efficiency among the litigants, the fifth factor to be considered under <u>Pansy</u>.  (Rec. Doc. No. 108 at 6).

The defendants contend that there is insufficient information to determine whether disclosure will cause embarrassment to a party or whether the information is important to public health and safety, but that the case does involve issues important to the public, a factor that weighs "heavily against a protective order." (Rec. Doc. No. 106 at 4).  We agree with the defendants that there exists insufficient information to determine whether the information is important to public health or safety or embarrassment to a party.  In addition, we also agree with the defendants that the case involves issues important to the public.  Although the

government contends that it does not seek to disclose supporting cost documentation, it does state that the information sought to be disclosed is "sensitive personnel information" that "'relates to costs' in the sense that the Defendants' total liability for the United States' response costs incurred at the Site will be reduced as a result of the disclosure . . . ." (Rec. Doc. No. 108 at 4, n.4, and 6). The court believes that this type of information is an issue that is important to the public and weighs against the issuance of a protective order; in fact, such information is of paramount importance, as it relates to the degree of total liability the defendants face concerning response costs undertaken at the Site.

The court has not been provided the information sought to be disclosed, or even the type of information, beyond the government's description of "sensitive personnel information." Without this documentation, the court cannot make a determination that a protective order is warranted based upon the Pansy factors. Therefore, we will order the government to provide to the court, *in camera*, the document at issue in its motion for a protective order pursuant to the Privacy Act of 1974, 5 U.S.C. § 552a. Disclosure of this documentation, *in camera*, will allow the court to determine whether a protective order pursuant to the Privacy Act may properly be issued.

## V. CONCLUSION

Based on the above, we will grant the government's motion for a protective order regarding confidential business information (Rec. Doc. No. 104). The scope of the protective order, however, will "not extend so as to prevent disclosure pursuant to any freedom of information law." Pansy, 23 F.3d at 791. In addition, we will order the government to provide the documentation, *in camera*, sought to be disclosed pursuant to 5 U.S.C. § 552a, in order for the court to properly determine whether a protective order concerning the information may be issued.

s/James F. McClure, Jr.
James F. McClure, Jr.
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,    :
                       :

           Plaintiff,    :     Civil Case No. 91-1501
    v.                  :
                       :     (Judge McClure)

CHROMATEX, INC., THE    :
VALMONT GROUP, ALAN    :
CHERENSON, STANLEY SIEGEL, :
ALAN SHULMAN, JAMES    :
COCHRAN and JOSEPH BYRNES, :
                       :
         Defendants.    :

## ORDER

July 6, 2010

For the reasons set forth in the accompanying memorandum, **IT IS**

**HEREBY ORDERED THAT**

1.    The United States' Motion for Protective Order Regarding

    Confidential Business Information is **GRANTED**, to the extent

    provided for in the accompanying memorandum.  (Rec. Doc. No.

    104).  An appropriate Protective Order is entered in conjunction with

    this Order.

2.    The government is directed to provide to the court, *in camera*, the

    information at issue in the government's Motion for Privacy Act

    Protective Order (Rec. Doc. No. 102) within fourteen (14) days of the

date of this Order.

3.  The court defers a decision as to the government's Motion for Privacy

    Act Protective Order (Rec. Doc. No. 102) until a review of the

    information sought to be disclosed is made.


                                        s/James F.  McClure, Jr.
                                        James F. McClure, Jr.
                                        United States District Judge